# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KATHRYN H.,[1] | : | Case No. 3:20-cv-00421 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

**I.   INTRODUCTION**

Plaintiff filed an application for Supplemental Security Income in August 2017. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This case is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.")

Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 14), Plaintiff's Reply (Doc. 15), and the administrative record (Doc. 10.)

## II. BACKGROUND

Plaintiff was forty-seven years old on the date the application was filed. Accordingly, Plaintiff was considered a "younger person" for purposes of determining her entitlement to disability benefits. *See* 20 C.F.R. § 416.963(c). She has a "high school education and above." *See* 20 C.F.R. § 416.964(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 10, PageID 56-69), Plaintiff's Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 14), and Plaintiff's Reply (Doc. 15). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); see 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S DECISION

### A. The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since August 9, 2017, the application date. |
| Step 2: | | She has the severe impairments of hypotension, cardiac murmur, hypokalemia, chronic headaches, insomnia, major depression, post-traumatic stress disorder, panic disorder and substance abuse in reported remission. |

    Step 3:    She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

    Step 4:    Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work except "[Plaintiff] is able to lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. She is never to climb ladders, ropes or scaffolds, but is occasionally able to climb ramps and stairs, and balance, stoop, kneel, crouch and crawl. She cannot perform job tasks that require frequent quick position changes, and she cannot have concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights. [Plaintiff] is not to operate a motorized vehicle and is not to perform outdoor work or be exposed to extreme heat. She cannot work in an environment that is more than moderately noisy and must avoid concentrated exposure to vibration and sunlight. Mentally, [Plaintiff] is able to understand, remember and carryout instructions and exercise judgment to perform simple tasks. She requires work that is routine and repetitive in nature, such that she is expected to perform essentially the same tasks in the same place daily. She is never to perform production pace or piece rate work, but can achieve end-of-day productivity goals. She is never to interact with the public and is not to work in crowded environments of 30 or more people in her immediate vicinity. [Plaintiff] is able to have occasional interaction with her coworkers, but cannot perform tandem work."

                  She has no past relevant work.

    Step 5:    Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 10, PageID 59-68.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 68-69.)

B. **Consultative Examiner Katherine A. Myers, Psy.D.**

Clinical psychologist Katherine A. Myers, Psy.D. conducted a consultative evaluation of Plaintiff. (Doc. 10, PageID 298-303.) Dr. Myers prepared her report after reviewing records provided by the Ohio Division of Disability Determination and interviewing Plaintiff. (*Id.* at PageID 298.)

During the interview, Plaintiff reported taking the following medications: Melatonin, prazosin, buspirone, and Trintellix. (Doc. 10, PageID 299.) She stated that before taking these medications, she had periods of hyperactivity. (*Id.* at PageID 301.) She stated that Buspar (buspirone) has reduced her panic attacks. (*Id.*)

Plaintiff stated that she is disabled by anxiety and severe depression and gets overwhelmed quickly. (*Id.* at PageID 298.) Due to her anxiety, she is unable to be in crowds and has difficulty going to the grocery store and to doctor's appointments. (*Id.* at PageID 301.) She last worked at a warehouse and stopped working after a month due to her anxiety. (*Id.* at PageID 300.) She missed work at two previous jobs due to anxiety. (*Id.*) She has difficulty using public transportation due to her anxiety. (*Id.*) She has some difficulty sleeping. (*Id.*) She has 2-3 crying spells a week and has some difficulties with irritability. (*Id.* at PageID 301.)

Plaintiff stated that when she has anxiety, she gets "the shakes," is out of breath, and "feels like someone is pushing on her chest." (Doc. 10, PageID 301.) Before taking her current medication, she felt like she was going to die when she was having a panic attack. (*Id.*) Dr. Myers stated: "She did not immediately report symptoms of PTSD but

6

when the paperwork she brought with her was reviewed (which indicated a diagnosis of PTSD) she reported difficulties with flashbacks and nightmares, as well as hypervigilance and startle reflex, as well as intrusive thoughts." (*Id.*)

Dr. Myers observed that Plaintiff was pleasant, cooperative, and maintained good eye contact. (Doc. 10, PageID 300.) Her speech, articulation and thought processes were normal. (*Id.*) Her mood was mildly depressed with blunted affect. (*Id.*) She appeared "somewhat tense" during the evaluation. (*Id.* at PageID 301.) She did not display any delusional or paranoid thoughts. (*Id.*) She was oriented to person, place, time, and situation. (*Id.*) Her cognitive functioning appeared to be in the low average to possibly upper borderline range. (*Id.*) Dr. Myers did not note any significant memory deficits. (*Id.*) Plaintiff recalled 3 of 3 simple objects immediately and 2 of 3 simple objects after five minutes of activity. (*Id.*) Her insight was adequate and she appeared capable of living independently and making decisions about her future. (*Id.*)

Dr. Myers diagnosed Plaintiff with major depressive disorder (single episode, mild), post-traumatic stress disorder, and panic disorder. (Doc. 10, PageID 302.) She opined that Plaintiff is able to apply instructions requiring low average to borderline intellectual functioning, would have difficulty remembering complex instructions, and would likely have difficulty with job-related tasks due to her psychological symptoms. (*Id.*) Dr. Myers opined that Plaintiff may work at a slower pace than her peers and will likely "show a pattern of periods of time away from work for mental health reasons." (*Id.* at PageID 302-03.) Dr. Myers did not identify significant limitations with Plaintiff's

ability to respond appropriately to supervisors and coworkers, although she noted that Plaintiff may be irritable at times. (*Id*. at PageID 303.) Finally, Dr. Myers opined that Plaintiff is likely unable to cope adequately with work-related stress at the time of the evaluation. (*Id*.)

After summarizing Dr. Myers' opinion and observations, the ALJ explained that he did not find her opinion to be persuasive:

> [Dr. Myer's] opinion is not persuasive since other mental examinations show that when she was using her medications, her symptoms significantly improved. In addition, other mental examinations even when she did not take her medication were better than what she portrayed at the consultative examination. Although there was a period she was without insurance and had no access to medications, there was a period when she had insurance and did not take the medication. [Plaintiff] testified that she had been insured by United Health Care for 4-5 years. Last, the opinion is not persuasive for the reasons set forth below, as it is not consistent with the residual functional capacity finding.

(Doc. 10, PageID 65.)  The ALJ subsequently explained:

> Although the claimant presented as highly anxious and with attention and concentration problems at the psychological consultative examination, other examinations showed that, when she took her prescribed medications, her symptoms were significantly better than she presented with at that consultative examination. Most of the mental status examination notes from her examining sources indicated few significant findings, and her scores on a depression screening tool – the PHQ-9 – often suggested no more than mild depressive symptom severity.

(*Id*. at PageID 67.)

V. **LAW AND ANALYSIS**

Plaintiff challenges the ALJ's consideration of the medical opinions rendered by psychological consultative examiner, Dr. Katherine A. Myers, Psy.D., and state agency

reviewers, Dr. Cindy Matyi, Ph.D., and Dr. Aracelis Rivera, Psy.D. Plaintiff also asserts that no medical opinion supports the mental functioning limitations in the RFC.

The Court agrees that the ALJ erred in his assessment of Dr. Myers' opinion. Finding error on this issue, the Court declines to address Plaintiff's remaining issues and instead instructs the ALJ to address all of the alleged errors on remand.

### A. Applicable Law

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and

(5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[2] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### B. Consultative Examiner Katherine A. Myers, Psy.D.

The ALJ was required to address the consistency and supportability factors when he explained why he found Dr. Myers' opinion not persuasive. 20 C.F.R. § 416.920c(b). Although the ALJ did explain his analysis of the consistency factor, he did not explain his analysis of the supportability factor. Moreover, even assuming that the ALJ explained his analysis of both factors, his factual findings are not supported by substantial evidence. The ALJ therefore erred in his analysis of Dr. Myers' opinion and reversal is required.

---

[2] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

The ALJ was required to explain his analysis of whether Dr. Myers' explanations and objective medical evidence (i.e., her mental status examination of Plaintiff) supported her opinion. 20 C.F.R. § 404.1520c(b)(2), (c)(1). The ALJ did not do so. The closest that the ALJ came to discussing supportability was when he discounted Dr. Myers' mental status examination—an erroneous finding that will be addressed below. The ALJ did not consider whether the mental status examination supported Dr. Myers' opinion. Nor did he explain his consideration of the explanations that she provided for her opinion. Therefore, the ALJ did not comply with the applicable regulations.

Even if the ALJ's decision could be construed as addressing the supportability factor, his factual findings with respect to both factors (supportability and consistency) are not supported by substantial evidence. The ALJ found that Plaintiff's symptoms were atypically worse at Dr. Myers' consultative examination because she was not taking her prescribed medications. (Doc. 10, PageID 65, 67.) The ALJ also found that her symptoms improved and "were significantly better" when she took her medications. (*Id.*) These findings are not supported by substantial evidence.

In fact, Dr. Myers' report shows that Plaintiff *was* taking her medications at the time of the consultative evaluation—and she even stated that the medications helped to improve her symptoms. Specifically, Plaintiff reported taking Melatonin, prazosin, buspirone, and Trintellix. (Doc. 10, PageID 299.) She stated that before she took these medications, she had periods of hyperactivity. (*Id*. at PageID 301.) She stated that Buspar (buspirone) has reduced her panic attacks and she no longer felt like she is going to die

during a panic attack. (*Id*.) The ALJ's factual finding that Plaintiff was not taking her medications is not supported by substantial evidence.

Substantial evidence also does not support the ALJ's factual finding that Plaintiff exaggerated her symptoms during this consultative evaluation. Nowhere in the report does Dr. Myers describe Plaintiff as presenting as "highly anxious and with attention and concentration problems." (Doc. 10 at PageID 67.) To the contrary, Dr. Myers' mental status examination revealed mostly normal findings. (*Id*. at PageID 301-03.) The ALJ's factual finding that Plaintiff's symptoms were exaggerated is not supported by substantial evidence.

In sum, the ALJ's assessment of the persuasiveness of Dr. Myers' opinion is not supported by substantial evidence. The ALJ also failed to explain his analysis of the supportability factor. For both reasons, reversal is required.

## VI. CONCLUSION

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 11) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

       */s/ Caroline H. Gentry*
       Caroline H. Gentry
       United States Magistrate Judge